Good morning, Your Honors. Dennis Connolly appearing on behalf of the plaintiff, Ms. Nima Boktor. Your Honors, Ms. Boktor's position is that she is entitled to further findings at the district court level because she has presented a genuine issue of material fact in her summary judgment motion. However slim the evidence is in balancing the equities here and I will be making, Ms. Boktor does have considerable hurdles to get over, and I will be making equity arguments in order to get over those hurdles because I am interested in justice and I think Ms. Boktor has... There are further findings available to Ms. Boktor that can be had at the district court level. Ms. Boktor, the record is very scant in regards to her testimony. There is only a deposition She was never able to testify at a court about promises that Prudential made in the intervening years between the earthquake and the time she filed her lawsuit, wherein she may be able to testify that Prudential was promising to pay... Well, she could have filed an affidavit. She could have had a counsel group take a deposition. Why didn't she have any opportunity to do it in opposing the summary judgment motion? I don't know at the point in the process, but her attorney did withdraw due to a disagreement. I don't know what the disagreement was, but finding an attorney, and this also is an unsophisticated plaintiff, Your Honor, who had just suffered a catastrophic loss, didn't have the money to hire an attorney, handled this case on her own for much of it, and did not know the to assert those claims. She was representing herself at the time of the summary judgment? Yes, she was, Your Honor. Well, that's a problem. That is a problem, Your Honor, and it would be difficult to find an attorney unless there was a very clear case that there was going to be a recovery at the end to handle it on This case in summary judgment can be distinguished from other summary judgment cases because there is a duty of good faith here. This is an insurer against an insurer who has just suffered a catastrophic loss, an indigent plaintiff in addition. Counsel, the complaint was for breach of contract and the breach of covenant of good faith and fair dealing as part of a breach of contract claim. What facts or additional information actually go to breach of contract as opposed to theories for reformation which weren't raised in the complaint? We would be hinging our hope on a reformed contract, Your Honor, on a reformed clause. A reformation, but the complaint was never amended to add that as a process? Correct, Your Honor, and again, the equity argument would be that remand back to the statute of limitations for that. Correct, that would also be another problem, another hurdle that she would have to get over, but she may be able to assert some sort of... I would call it more of a moat. Yes, it would be a moat, Your Honor, and... Or a crocodile. It would be a large moat. I don't see how she could swim across. It would be a large moat. There are ways to get across those moats, Your Honor, with equitable arguments for equitable tolling of the statute that she could make. No, no, no, of course. She would basically have to say that she didn't have a contract, right, and that, in fact, she had a right to have the... I'm sorry, she had an insurance contract that did not include... Earthquake coverage, yes. And that she has a right to come in and have that contract informed to show earthquake coverage. Correct, Your Honor. And that she can do that how many years after she learned that she didn't have earthquake coverage? It's not clear on the record, but at the time... It's a three-year statute of limitations, right? Correct. Okay, and it's some considerable time after three years. Yes, it would be. She was advised in 1994 that her contract didn't include earthquake coverage. Correct, Your Honor. One of the exhibits, though, is a letter from Prudential in 1999, still attempting to clarify for Mrs. Bachter that her claims were denied, which there may have been a language problem. There may have been a communication problem. I don't understand what exactly took place. But she was obviously not clear that her claim had been denied. She was expecting, during that period of time, and I believe that if there were further findings at the district level, that she would be able to testify about this confusion, why she was seemingly under the impression that Prudential was still processing her claims, which is what I believe her testimony would show. And I believe that the summary judgment is distinguished in this case also because the existing undisputed facts point to facts that are in dispute, that are so narrow that could be cleared up at a district for further findings. So it's distinguished from other summary judgment cases based upon the fact that this defendant had a duty of good faith, that the issues in dispute are so narrow that the existing facts that are not in dispute point to these facts that are in dispute, and they are so narrow that further testimony could be taken to resolve that dispute, and it would not be contrary to the efficiency of the justice system to allow that to take place. And if the justices have no further questions, I'll reserve the rest of my time. Thank you. I think in this case both law and justice dictate that the court affirm the district court's opinion. I think as the court has already discussed with my learned colleague, the facts in this case were actually quite clear to the district court when the district court took them. After the fact, she claimed that the agent of the insurance company told her that she had money, that money was there at the company and she could use it for earthquake insurance, and she then thought that he said he would do that for her? She made that claim. I apologize, Your Honor. And she thought she had the earthquake insurance? She made that claim eight years after her claim was denied, and only after this case was in litigation. It was well beyond the statute of limitations for any reformation arguments or any negligence arguments on behalf of the agent. The only time that that argument came up was well after the claim had been denied in May of 1994, as is indicated by Mrs. Boctor herself, and well after Mrs. Boctor came back to the company in 1999 and said, gee, I'm a little unclear. Do I have coverage for this? In 1999, the record indicates the company wrote her a letter saying we told you in 1994 you didn't have coverage. In 1999, you still don't have coverage. Mrs. Boctor just did not purchase earthquake insurance for these three properties. It never occurred. Tell me about this form that's in the excerpt of the record, the one dated November 1, 1993. The form you're looking at, Your Honor, is called an election of coverage form. I can tell you that there is really nothing in the record that really authenticates this form, that it's a prudential form. And the interesting thing about that form is that form was only provided to Prudential when we were in this case, in this litigation, eight years after she knew that the claim was denied. No, but it is a prudential form that she did. It is not. It is not. It is not. Prudential does not. It certainly doesn't look like a form that Mrs. Boctor would have taken up herself. Well, I can tell you, Your Honor, it's not a form that Prudential prepared. And the interesting thing about the form is the form is dated November 1, 1993. Her applications for coverage with Prudential were on November 15, 1993. Why would you be asking an insurance company to add earthquake coverage to your policies two weeks before you ever applied for coverage? She had no coverage with Prudential at that time? She had no earthquake coverage with Prudential at that time. No coverage of any kind? She did not. Her first coverage with Prudential came in November? It was November of 1993, Your Honor. She applied for policy on November 15, 1993 for these three properties. Prudential provided her with that coverage in January of 1994 as is set forth in the supplemental excerpts of record on pages 14 through 17. Prudential sent her three letters. Those letters indicated that there was no earthquake coverage on any of her policies. And it offered her earthquake coverage should she choose to place earthquake coverage on those policies. Excuse me. I thought that she first purchased insurance from Prudential in 92. Is that not correct? You know, Your Honor, she may have purchased it once in 1992 for one of her properties, but not for the two other properties. This is from the declaration of James Smell. Yes. Beginning in 92, Prudential issued several fire insurance policies to Mrs. Blackter covering her properties located at the following three addresses and then lists them. And I apologize. I'm mistaken. It was 1992. But I do know for some reason these policies went out of force. But that makes it a lot more likely that she could have submitted a letter in April of 93 saying she wanted earthquake insurance. In November of 1993, Your Honor. April. This was April 1st, you said, that the form was dated. I apologize. November 1st. November 1st of 1993.  There are a lot of dates in this case. And the district court looked at all this. When was the quake? I apologize. When was the quake? The earthquake was January 17th of 1994, Your Honor. I don't know which one. 432 a.m. So just to get the timeline straight, her testimony was that in 93, so she had the policies in 92. In 93, the agent informed her that she had a credit on the account and told her apply it to earthquake coverage. And then she says, Ms. Bachter says she then returned an earthquake coverage election form provided to her by Prudential. So that's the timeline. Then she got a letter on January 4th, 94, with the form letters, saying that she didn't have earthquake coverage and that she had an option to add that coverage. That's correct. Prudential sent her a letter on January 4th, 1994, indicating that she did not have coverage under these policies for earthquake. Excuse me. Well, in any event, we got off on all of this because you said you could defend this on the basis of justice, on the uncontested facts. Maybe it's better to rely on law than the summary judgment. Is there a reason we should not reverse the summary judgment? I think that there are several reasons not to reverse the summary judgment, Your Honor. I think, as the Court has already indicated, this case was pled as a breach of contract and breach of the implied covenant case. There are absolutely no allegations for reformation. I don't think you ever fully answered my question, which goes to this point here. The form is in the record, right? It is. Okay. And I asked you about it, and you said it's not authenticated, it's not a Prudential form. It is not a Prudential form. How is it in the record? It is in the record because it was presented to us during the course of discovery, Your Honor, from the — from Mrs. Bachter herself. I can indicate to you that after this case was initiated — But there's lots of stuff that gets presented during discovery — Correct. — that doesn't make its way to the record. How is this in the record? She attached it as an exhibit to her declaration in opposing the motion for summary judgment. And so this was one of the documents that she referred to in opposing the motion for summary judgment in this case. So it's sort of something supporting her affidavit. That is correct. However, the district court reviewed this document and found the document to be not helpful on the issues because the district court noted that the policies that were issued to her were policies that did not have coverage for — Let's say we take her affidavit and the form together, and we read them as saying, On November — on or about November 1st, 1993, I sent in a form, and I talked to my credential agent, and I sent in a form, indeed this very form, asking for coverage. Yes. Okay. I think that's a fair reading of her affidavit. I believe that's what she said. Now, we have to treat that as a gospel truth because it's summary judgment. Yes. Okay. What do we do with that fact in the record? I think what you do with that fact is you basically indicate that what she is saying in opposing the motion for summary judgment is that the contract needs to be reformed. However, that's diametrically opposed to the issues that she's framed in her complaint. In the complaint, she's indicated that this case is based upon her insurance policy. The insurance policy that was issued by credential does not contain coverage. Let's say that the evidence that she presents makes out a claim for reformation, and the court can conform the complaint to the evidence, but I thought it was your position that it could not be reformed at that point. I don't believe it can be reformed, Your Honor. Because of the statute of limitations? Because of the statute of limitations problem. That's why I was asking you to get to your legal argument. I apologize. No, you don't have to apologize. You've still got a minute and a half left. I appreciate that. As I understand, your theory is, in your brief, if I recall, that even if she had a valid cause of action for reformation, and even if she had pleaded, it was too late? That is correct. In this case, she didn't bring her complaint until 2001, seven years after this insurance claim was denied. So seven years after she knew that the company's position was she did not have earthquake coverage. The revival statute does not revive a cause of action for reformation. That is correct. As the Campanelli Court stated, the only revival that's available under 340.9 is a revival of claims on the contract itself, on the written contract. Here, the written contract. And the California courts have said you can't revive a cause of action for fraud. That is correct. I don't think this would be similar to that. That's right. That's your legal argument. Yes, you're quoting from the Hellinger case now. That is correct, Your Honor. So in this case, because this is not, reformation would not be a cause of action based upon this written policy, it cannot be revived under 340.9. Let's talk about reformation. So you call your insurance company and say, I want earthquake coverage. And they say, fine, send in a form. I realize you dispute this is a form, Your Honor. True. So, and they say, send in the form, and as soon as we get the form, let's say it's not earthquake coverage, let's say it's not earthquake coverage. Let's say, look, I'm going on a trip. I want to make sure I've got plenty of coverage. I want to increase my limits because, and I want to be sure I'm covered when I leave tomorrow morning at 8 o'clock. So they say, fine, send your form in, and you'll know you're bound as soon as we receive the form. Right? Happens very often. It's very common. You don't actually get a policy right away. Eventually, at some point later on, they send you a policy saying here are your limits, and your declaration page, and all those things. But the very act of sending in the form and having it received by the insurance company binds the company to the policy. Now, reading what is going on here, and reading her declaration and exhibit in the most favorable fashion, perhaps you might say charitable, why is this a claim that in fact she had coverage as of November 1, 1993? Because she, according to her statement, it's one declaration called and was told she had coverage, and because she, according to her declaration and the form that she attaches, she actually sent it in. And at that point, the insurance company, oh, not information. But in fact, no. Now, then shortly after that, the earthquake happens, and the insurance company looks over and says, whoo, we got those policies. We're not going to send out any policies because we've got this huge loss here. I assume that's what happened. She would, if she got the form in, she would have a policy, she would be bound, even though they had issued no declaration page or nothing of that sort, right? I can't say that that's the case, Your Honor. Under Insurance Code Section 10088, the California legislature has indicated that they really don't want the issue of earthquake coverage to be something that's up in the air. They basically want insurers to pay premiums for it. They want to make sure that the insurers have requested the coverage, and they want to make sure that premiums are paid for it. In this case, you've got a case where this insurer, apparently, did not ask for earthquake coverage. She had a credit, so the matter of payment is not an issue because she had a credit in her account. So the insurance company already had her money, if you believe her story. And I'm not sure that her declaration is really clear on that point. The whole declaration in terms of credit, what the credit was, what it was supposed to be applied for, there's really no evidence in the record supporting any of that. We don't see any documentation. We don't really see any explanation from her own declaration concerning this credit. I understand that you are disputing sort of the factual credit of the theory, and maybe you're right in disputing it. Maybe that's the winning argument. But let's say she has all of those things, or we read them in as being close enough. Would she, at that point, have a claim for reformation? Would that be a claim in the contract? Would she, in fact, have a policy? At that point, even though she got nothing back, she's told, once you send it in, once we've got the money, you've got coverage. I think her claim is for reformation, Your Honor, because, in essence, what she's saying to the insurance company is, I requested that you provide me with a certain type of coverage. You didn't provide me with that coverage. Therefore, the insurance policy needs to be reformed. Suppose she didn't have any other policy. I beg your pardon? Suppose she didn't have any other policy in existence. She just said, you know, I really need an earthquake insurance policy. And her agent said, well, okay. You can get an insurance policy covering earthquakes with my company. They happen to have some money of yours from an old contract. Just send in this election, and they'll send you a policy. And then they never send her the policy. Is that reformation? Is it? What is it? It's not a cause of action for breach of the binder, or for the agreement, breach of the oral agreement, to provide a policy? No, the cause of action, Your Honor, would be for reformation, because the policy of the government. Well, you have to have a contract to report. That is correct. However, what you're basically doing. But if you deny there's a contract, you never send her a contract, she doesn't want a reformation. She wants the contract. However, what the theory is that you're describing is that the insurance company and or the agent didn't provide me with the coverage that I wanted. And the coverage that they did supply me with was erroneous in some way. Well, that's one way to look at it, because she had a contract. But they never gave her anything further after she sent in this binder, I mean, this election. It's not that they gave her something in exchange for the election, but it was the wrong thing. However, as indicated in the supplemental record. Let me actually just assume that there was no contract in effect at all, that there was nothing to reform. She just said, I want the contract. The agent said, yep, you've got it. Your money's already in. You've got insurance. But there was no policy under issue. Would that under the California statute be revived, or is that not enough for revival? Well, that's an interesting factual scenario, in the sense that there's no contract issued. Right. So it's not a breach of contract. And so since it's not a breach of contract in 340.9. It's a breach of an agreement to provide a contract. Right. It's not a breach of the insurance contract policy, the provisions of the policy. It's a failure to provide a policy. I understand what you're saying, Your Honor. However, I would say that. Is that kind of a claim revived under the California statute? No, it's not. Because 340.9 indicates that the only types of causes of action are revived are causes of action on the contract, meaning on a written contract. According to this theory, she's got a contract. I beg your pardon? According to this theory, she's got a contract. Well, she's alleging that she has a contract, but the contract she's alleged is not for earthquake coverage. Let me make sure I understand. You send this in your declaration, your application, with a check, and the insurance company writes back and says, you know, faxes back or sends you a piece of paper saying, you're covered. This is a binder. You are, as of 12.01 p.m. on December 4th, 2006, you are covered. Now, the fact that we don't actually send you a contract with all the terms is not dispositive. At that point, you do have a contract, right? I would say if you have a binder, Your Honor, and it's an effective binder, you've filled out the application, you've paid the money for it. Why are you repeating the question? Because I'm trying to make sure that I don't misunderstand the question, Your Honor. I apologize. Just tell me yes or no. You send your money in with an application. They write back and they say, you've got a binder. You know, you have coverage. In the factual circumstances that you are supplying me with, based upon the fact that the application was filled out, the money was paid, and the agent indicated I have binding authority, you would have. Are you repeating the word? What's that? Yes or no? I would say, based upon what I just said, yes, you would have a binder. However, you don't have those. I don't want you to answer your own question. Answer my question. Answer yes or no. The answer to your question, Your Honor, as I understand it, is yes. Okay. So if that is the case, that is a claim on the contract. If she later says, look, they never sent me a contract, the next day I had a loss and I never did get a contract in the mail, she could sue on the contract. And she has a contract that would be revived by the revival statute. If this were a contract that, if this is what had happened at the time, she would have had a contract which would have been revived by the revival statute. Any claim on that would have been revived, right? If it were based on the written contract, yes. So the only difference we have is that she didn't get a binder back. Well, here what she did get back from the insurance company were letters on January 4th of 1994 that said you don't have earthquake coverage. So she knew that she did not have earthquake coverage under those policies. And that's in the supplemental record at excerpts, supplemental excerpts of record at pages 14 through 17. So here you don't have the insurance company telling her, yes, at all times we knew that you were bound for earthquake coverage. Quite the contrary, you have the insurance company indicating you don't have earthquake coverage under your policies. And why isn't that just a factual dispute? That fact's not disputed, that the insurance company basically indicated there was no earthquake coverage and then the insured didn't take any steps to get earthquake coverage after that. Okay. I think I understand. Thank you. I'm balancing the equities. I believe there are a lot of facts that could be determined with further fact-finding. And even as you've raised another alternative theory that could be proven by facts that have still yet to be found, in fact, this defendant also has a duty to investigate. And it being one of their agents that sold this policy, an additional fact could be that they may be able to locate him or have some control over him still. With the disparity in the resources of these parties. What do you do with the fact that she gets a letter in January, this is a month, this would have been a month, and no, it would have been more like two months, a little over two months after she sent this in saying you don't have earthquake coverage. And at that point she does nothing. It could be, Your Honor, that she never actually received it herself, that she never understood it. There are multiple people who are living there. She has a large family. And I don't know if that would raise a legal defense. But for whatever reason, I think there could be a legal explanation or an explanation why she didn't either receive it or understand it. Counsel, the declaration, just quickly reviewing it in the records, doesn't state that Ms. Bockdor was assured by anyone that she had earthquake coverage. It just says something to the effect of no one told me that my election was denied or rejected. But it doesn't sound like anyone affirmatively told her, yes, you're covered. Is there something in the record that supports that? I don't believe it's in the record, Your Honor. But I believe if her testimony were allowed to be heard, that she would testify to the agent representing that fact based upon the credit that was present. It was prudential. Nobody told her afterwards? Does the record show that the agent told her before that if she sent in the election she would be covered?  Yes. You said that no one told her afterwards, after she sent in the election, that she was covered. Does her affidavit state that the agent told her that if she sent in the election she would be covered? No, that's not on the record, Your Honor. But again, based upon further fact finding and a remand, I believe there could be much testimony regarding the ensuing events after she did give this election form, whether it be to the company or the agent and their representations and the years in between the actual earthquake and the eventual lawsuit that she filed. All right. Thank you, counsel. Thank you. Thank you, Your Honor. The case is submitted. The next case on the calendar for oral argument is Imperador v. Prudential.
judges: Reinhardt, Kozinski, Ikuta